UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE | ) |
| | ) |
| WALTER IRMEN | ) Chapter 7 |
|     Debtor. | ) Bankruptcy No. 07 B 03103 |
| | ) |
| KENNETH M. NEIMAN, individually and as | ) |
| assignee of MERCANTILE HOLDINGS, | ) |
| INC. | ) |
|     Plaintiff, | ) |
| | ) Adversary No. 07 A 00404 |
|     v. | ) |
| | ) |
| WALTER IRMEN | ) |
|     Defendant. | ) |

### AMENDED MEMORANDUM OPINION REGARDING DEFENDANT WALTER IRMEN'S MOTION TO DISMISS PLAINTIFF KENNETH M. NEIMAN'S ADVERSARY COMPLAINT PURSUANT TO FRCP 12(b)(6) (Bankruptcy Rule 7012)

Defendant Walter Irmen ("Irmen," "Defendant," or "Debtor") filed his Chapter 7

bankruptcy case on February 22, 2007. Plaintiff Kenneth M. Neiman ("Neiman" or "Plaintiff")

filed this related Adversary Complaint against Irmen. Plaintiff filed in his individual capacity

and as assignee of Mercantile Holdings, Inc., an Illinois corporation. The Complaint objects to

Irmen's discharge under 11 U.S.C. § 727 and to dischargeability of certain alleged debt under

11 U.S.C. § 523. Irmen has moved to dismiss Neiman's Complaint pursuant to Rule 12(b)(6)

Fed. R. Civ. P. made applicable by Rule 7012 Fed. R. Bankr. P. For reasons set forth below,

Irmen's Motion to Dismiss Plaintiff's Adversary Complaint was granted in part and denied in

part.

## MATTERS ALLEGED IN COMPLAINT

Prior to filing his Chapter 7 bankruptcy case, Irmen was president of three affiliated companies, Auxano, Inc., Auxano Services, Inc., and Auxano Wireless, Inc. (collectively referred to as "Auxano"). All were closely held corporations registered in Illinois with shares held by Irmen and/or his wife. Auxano was in the business of acting as a general contractor for several construction projects in Illinois and various other states, for clients including BP Corporation North America ("BP") and Millenium Venture Group, Inc. ("MVG"). Disputes arose between Auxano and several of its clients resulting in litigation in various states with several judgments entered against Auxano and Irmen. All Auxano affiliated businesses have since dissolved.

Neiman is the president of Mercantile Holdings, Inc. ("Mercantile"), an Illinois corporation. On March 12, 2005, while Auxano was still operating, Mercantile entered into an agreement, titled "Agreement For Assignment of Claim & Mechanics Lien" ("Agreement"), with Irmen and Auxano wherein Irmen caused Auxano to assign to Mercantile any causes of action Auxano held against BP, MVG, and various other of Auxano's clients. The Agreement acknowledged that those clients failed to pay for services provided by Auxano and that Auxano did not have the resources to pursue claims against them. The Agreement further stated that Irmen would cooperate with Mercantile's efforts to enforce these claims. Additionally, the Agreement stated that Neiman is a third party beneficiary of the contract between the parties. Irmen personally guaranteed this contract.

After the Agreement was executed, several of Auxano's clients, including MVG and BP, sued Auxano and Irmen for breach of contract, resulting in several judgments against Irmen. Irmen subsequently filed for Chapter 7 relief wherein Neiman and Mercantile were listed as

2

creditors with "unknown" claims. On March 1, 2007, Neiman, in his capacity as president of

Mercantile, caused Mercantile to assign all causes of action against Irmen and Auxano to

himself. Shortly after Irmen filed his bankruptcy case, Neiman, acting *pro se* in the bankruptcy

case, sent Irmen several document requests. About the same time, Mercantile, represented by its

own attorney, sought leave to conduct an examination of Irmen pursuant to Fed. R. Bankr. P.

2004. Neiman attempted to join in that motion. Mercantile was granted leave to conduct the

Rule 2004 examination of Irmen, but Neiman was denied leave to conduct his own examination

as part of Mercantile's examination. Neiman then filed this Adversary Complaint *pro se* as

assignee of Mercantile, objecting to Irmen's discharge and the dischargeability of certain alleged

debt.

Although "Count I" and "Count II" are referred to in the Complaint, those parts of the

pleading are part of each substantive Count and do not purport to state separate causes of action.

The eight substantive Counts allege false oaths on schedules (Count III), failure to maintain or

produce documents (Count IV), failure to explain significant monetary transactions (Count V),

action for declaration of non-dischargeability against Irmen relating to MVG and BP (Counts VI

and VII), action for declaration of non-dischargeability against Irmen pursuant to 11 U.S.C.

§ 523(a)(6) (Count VIII), action to declare judgment non-dischargeable pursuant to 11 U.S.C.

§§ 523(a)(4) & (a)(6) (Counts IX and X).

Other background facts alleged are referred to in the discussion below.

## JURISDICTION AND VENUE

The issues arise under 28 U.S.C. § 157, and are referred to this Court under Internal

Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

3

This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Subject matter jurisdiction
arises under 28 U.S.C. § 1334(b). Venue is proper under 28 U.S.C. § 1409.

## NEIMAN'S ABILITY TO PROCEED WITHOUT COUNSEL

Neiman is not authorized nor has ever been authorized to practice law in Illinois. Inmen
first argues that Neiman's entire suit should be dismissed because he is engaged in an
unauthorized practice of law by bringing this suit *pro se* as assignee of all claims held by
Mercantile. In Illinois, a corporation cannot file a complaint unless through a licensed attorney.
*Berg v. Mid-America Industrial, Inc.*, 688 N.E.2d 699, 701 (Ill. App. Ct. 1997). Any action filed
by a corporation without an attorney is "null and void *ab initio*." *Id.* Neiman has made clear that
he does not intend to employ an attorney to pursue his Complaint.

Defendant relies on *Biggs v. Schwalge*, 93 N.E.2d 87 (Ill. App. Ct. 1950). In *Biggs*, the
president of a corporation attempted to avoid the rule requiring a corporation be represented by
an attorney in any legal proceeding. He did so by assigning claims of the company to himself
and filing the claims *pro se*. His case was dismissed after he was ordered to obtain an attorney
and refused to do so. The *Biggs* plaintiff argued that, as an assignee, he was the legal holder of
the claim and therefore entitled to pursue the claim *pro se*. This argument was rejected as an
attempt by a non-lawyer to avoid the requirement that a corporation be represented by an attorney
and held "an assignment cannot be used as a subterfuge to enable plaintiff to indulge his
overwhelming desire to practice law, without complying with the requirements for admission to
the bar." *Id.*, at 88.

Neiman filed this action both individually and as assignee of Mercantile's claims against
Inmen. Under authority cited in *Biggs*, Neiman is indeed precluded from representing Mercantile

4

*pro se.* Neiman's act as president of Mercantile to assign Mercantile's claims to himself does not

allow him to proceed in this action to pursue Mercantile's claims without an attorney.

Neiman contends that *Biggs* is inapplicable because he is also a third party beneficiary

under the Agreement. He seeks to proceed *pro se* because he is representing his own interest as

beneficiary under that contract. Neiman relies on language in paragraph twenty six of the

Agreement: "It is expressly understood that while Kenneth M. Neiman is not a party or

otherwise obligated under this agreement, Kenneth M. Neiman is a third party beneficiary under

this agreement."

It is therefore necessary to consider Illinois third party beneficiary law. In this state,

where a contract is executed for direct benefit of a third party, that party may sue for a breach of

that contract in his or her own right, "even where the third person is a stranger to the contract and

the consideration." *Olsen v. Etheridge*, 686 N.E.2d 563, 566 (Ill. 1997). It is manifestly practical

to allow a third party beneficiary to sue the promisor directly. This rule promotes judicial

efficiency by omitting the privity requirement, "under which the beneficiary must sue the

promisee, who then must sue the promisor." Moreover, the promisor can raise any defense

against the third party beneficiary that it could raise against the promisee. *Id.*

To have a valid third party beneficiary contract, "the promisor's intention must be

evidenced by an express provision in the contract identifying the third party beneficiary." *McCoy*

*v. Illinois Int'l Port Dist.*, 778 N.E.2d 705, 712 (Ill. App. Ct. 2002) (quoting *A.J. Maggio Co. v.*

*Willis*, 738 N.E.2d 592, 599 (Ill. 2000)). Whether a party is a third party beneficiary is examined

on a case-by-case basis by looking at the intent of the parties. "In making this determination, it

must appear from the language of the contract when properly construed that the contract was

made for the direct benefit of the third person and that the benefit was not merely 'incidental.'"

*Id.* (quoting *Midwest Concrete Products Co. v. LaSalle National Bank*, 418 N.E.2d 988, 990 (Ill.

1981)). The general presumption is that the parties intend that the contract only applies to the

original parties and not others. For a third party to have standing to sue under a contract, the

contract must make clear the intention that the contract was undertaken for the third party's direct

benefit. *Id.*

Applying the foregoing principles, it is clear Neiman is a third party beneficiary under the

Agreement. Paragraph twenty six expressly states that Neiman is a third party beneficiary to the

Agreement assigning Auxano's claims to Mercantile. The Agreement, by that express provision,

evidences a clear intent that the Agreement was made for benefit of Neiman. Since Neiman is

third party beneficiary of the contract, he may bring suit against Irmen in his own right and may

exercise that right *pro se*. Neiman can proceed with his *pro se* representation in this case to the

extent that he seeks to enforce his own rights and claims under the Agreement and is therefore a

creditor in the Debtor's bankruptcy.

Therefore, the motion to dismiss, to the extent it relies only on the fact that Neiman has

no lawyer, must be denied.

6

## SUFFICIENCY OF THE PLEADINGS[1]

The rest of Defendant's Motion to Dismiss tests whether the eight substantive Counts of

Neiman's Complaint meet pleading requirements necessary to survive a motion to dismiss under

Fed. R. Civ. P. 12(b)(6) [Rule 7012 Fed. R. Bankr. P.].

A Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr.

P. 7012, tests the sufficiency of the complaint rather than the merits of the case. *Gibson v. City

of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). All well-pleaded allegations of the complaint

are assumed true and read in the light most favorably to the plaintiff. *United Independent Flight

Officers v. United Air Lines*, 756 F.2d 1262, 1264 (7th Cir. 1985). If the complaint contains

allegations from which a trier of fact may reasonably infer evidence as to necessary elements of

proof available for trial, dismissal is improper. *Sidney S. Arst Co. v. Pipefitters Welfare Educ.

Fund*, 25 F.3d 417, 421 (7th Cir. 1994).

Fed. R. Civ. P. 8(a)(2) [Rule 7008 Fed. R. Bankr. P.] generally requires the pleader

provide "a short and plain statement of the claim showing that the plaintiff is entitled to relief,"

giving the defendant "fair notice of what the ... claim is and the grounds upon which it rests."

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355

U.S. at 47 (1957)). A complaint need not contain detailed factual allegations, but "the grounds of

his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Id.* at 1964-65 (internal quotations omitted).

Factual allegations must show that the right to relief is more than speculative. *Id.* at 1965.

---

[1]"Count I" discusses jurisdiction and venue and "Count II" discusses the parties. Neither
of these "counts" purport to be causes of action, and the Motion to Dismiss is not understood to
pertain to those allegations.

Prior to *Bell Atlantic*, the Supreme Court opinion in *Conley v. Gibson*, 355 U.S. at 47,
stated that the purpose of Rule 8(a)(2) Fed. R. Civ. P. is to "give the defendant fair notice of what
the plaintiff's claim is and the grounds upon which it rests." That was the "notice pleading"
standard, as it came to be called. It also became the accepted rule that a Rule 12(b)(6) Motion to
Dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set
of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. *Bell Atlantic*
rejected the "no set of facts" concept , saying that it has been "questioned, criticized, and
explained away long enough . . ." and "is best forgotten as an incomplete, negative gloss on an
accepted pleading standard . . .." *Bell Atlantic Corp.*, 127 S. Ct. at 1969. Instead, a complaint
must at least have factual allegations that show a right to relief above the speculative level, id. at
1969 (citations omitted), and "state a claim to relief that is plausible on its face." Id. at 1974.
However, the opinion made clear that it has not abandoned "notice pleading" insofar as "we do
not require heightened fact pleading of specifics." Id.; see also *Erickson v. Pardus*, 127 S. Ct.
2197, 2200 (2007).

Seventh Circuit opinions have discussed *Bell Atlantic* no fewer than twelve times in the
six months since *Bell Atlantic* was announced. *See George v. Smith*, No. 07-1325, 2007 WL
3307028, at *2 (7th Cir. Nov. 9, 2007) (Easterbrook, J., Manion & Kanne, JJ.); *Killingsworth v.
HSBC Bank Nevada, N.A.*, No. 06-1616, 2007 WL 3307084, at *2-3 (7th Cir. Nov. 9, 2007)
(Sykes, J., Bauer & Manion, JJ.); *Sims v. County of Bureau*, No. 01-2884, 2007 WL 3036752
(7th Cir. Oct. 19, 2007) (Kanne, J., Easterbrook & Flaum, JJ.); *Sellers v. Daniels*, 242 Fed.
Appx. 363, 364 (7th Cir. 2007) (Rovner, J., Williams & Wood, JJ.); *Lang v. TCF Nat'l Bank*,
No. 07-1415, 2007 WL 2752360, at *2 (7th Cir. Sept. 21, 2007); *St. John's United Church of*

8

*Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (Wood, J., Bauer & Ripple, JJ.);

*Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007)

(Wood, J., Flaum & Manion, JJ.); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir.

2007) (Ripple, J., Evans & Wood, JJ.); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773,

776-782 (7th Cir. 2007) (Cudahy, J., Bauer & Flaum, JJ.); *Local 15, Int'l Bhd. of Elec. Workers,*

*AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007) (Kanne, J., Easterbrook &

Williams, JJ.); *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472-73 (7th Cir. 2007) (Wood,

J., Evans & Williams, JJ.); *In re Ocwen Loan Servicing, LLC Mortgage Servicing Litig.*, 491

F.3d 638, 648-49 (7th Cir. 2007) (Posner, J., Rovner & Sykes, JJ.).

These opinions show some different approaches to reading *Bell Atlantic*. Judge

Easterbrook recently opined that "[p]laintiffs need not plead facts . . . but they must give enough

detail to illuminate the nature of the claims and allow defendants to respond." *George*, WL 2007

3307028, at *2 (citations omitted). It is difficult to understand how a plaintiff need not plead

"facts" but must plead "detail." Moreover, in a bankruptcy case seeking to block dischargeability

or discharge, merely stating a prayer for such relief does not tell which of the many alternative

possible claims are being asserted. (See 11 U.S.C. §§ 523 and 727 for definition of the many

different causes of action). However, the majority of the Seventh Circuit opinions recognize a

more rigorous pleading requirement under *Bell Atlantic*. *See Airborne Beepers & Video, Inc.*,

499 F.3d at 667 (Wood, J.) ("[w]e understand the Court to be saying only that at some point the

factual detail in a complaint may be so sketchy that the complaint does not provide the type of

notice of the claim to which the defendant is entitled under Rule 8."). Another opinion fashioned

a two-part test for testing the sufficiency of pleadings under *Bell Atlantic*:

> First, the complaint must describe the claim in sufficient detail to give the
> defendant "fair notice of what the ... claim is and the grounds upon which its
> rests.... Second, its allegations must plausibly suggest that the plaintiff has a right
> to relief, raising the possibility above a "speculative level"; if they do not, the
> plaintiff pleads itself out of court.

*Concentra Health Servs.*, 496 F.3d at 776 (Cudahy, J.) (citations omitted).  The second of those

points raises the question as to when the "plausibly suggest" standard is met.

At least in a bankruptcy proceeding seeking to block discharge and dischargeability, the

reading of *Airborne* and *Concentra* confirm that the requisite pleadings must "give enough detail

to illuminate the nature of the claim and allow defendants to respond," to quote George.  The

need for such "detail" is illustrated in the prolix Complaint at issue here which is filled to the

brim with rhetoric and quotations from the statute, but is often short on detail needed to inform

the defendant about the matters sought to be pleaded.

While most pleadings are bound by the foregoing standards, allegations of fraud must

properly be pleaded in conformance to Fed. R. Civ. P 9(b) [Rule 7009 Fed. R. Bankr. P.].

*Borsellino v. Goldman Sachs Group, Inc.*, 477 F3d 502, 507 (7th Cir. 2007).  Under Rule 9(b), in

"averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

with particularity."  *Id.* (quoting Fed. R. Civ. P. 9(b)).  This requirement insures that defendants

have fair notice of plaintiffs' claims and grounds, providing defendants an opportunity to frame

their answers and defenses.  *Reshal Associates, Inc. v Long Grove Trading Co.*, 754 F. Supp.

1226, 1230 (N.D. Ill. 1990).  Fair notice requires facts supporting the allegations; a quotation

from a statute will not suffice.  *Borsellino*, 477 F.3d at 507  Additionally, allegations founded

upon "information and belief" do not comply with the specificity requirement unless

accompanied by a statement of fact providing the basis of the belief. *Interlease Aviation*

*Investors II v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028, 1040 (N.D. Ill. 2003).

## COUNT III - § 727(a)(4)(A) CLAIM

In Count III of his Complaint, Neiman alleges "False Oaths on Schedules." Specifically,

Neiman alleges that Irmen undervalued his house on his schedules, failed to schedule a lien filed

by Neiman and Mercantile, failed to disclose various judgments, submitted incomplete

schedules, and either destroyed Irmen's books and records or concealed them. The pertinent

provision of the Bankruptcy Code regarding false oaths is § 727(a)(4)(A) which provides that

"the court shall grant the debtor a discharge, unless - . . . the debtor knowingly and fraudulently,

in or in connection with the case - . . . made a false oath or account..." Since § 727(a)(4)(A)

necessarily requires that debtor acted fraudulently, pleading a claim under this section is subject

to Fed. R. Civ. P. 9(b) (made applicable by Fed. R. Bankr. P. 7009), requiring allegations of

fraud to be pleaded with particularity. *In re Meffert*, 232 B.R. 71, 74 (Bankr. S.D.N.Y. 1998); *In*

*re Potter*, 88 B.R. 843, 848 (Bankr. N.D. Ill. 1988).

Neiman first attacks Irmen's Schedules A, B, C, and D by making several conclusory

allegations, stated below:

> 11(1) The Debtor falsely represents on Schedule "A" that 508 S. Ridge Avenue,
> Arlington Heights [sic] Illinois has a market value as of the date that the Schedule was
> filed of $425,000.00... Debtor knew or should have known that the value of said realty
> was higher . . ..
>
> 12(1) The Debtor, *upon information and belief*, has not disclosed personal property that
> the Debtor's spouse has disclosed to which the Debtor has an interest in said personal
> property that has not been disclosed, but should have been disclosed . . .. (emphasis
> added).

11

12(2) The Debtor has not accurately valued the property on Schedule "B".

12(3) The Debtor has falsely represented to having a claim against Kenneth Neiman in order to justify the lack of missing assets and in an attempt to dissuade said creditor from pursuing the instant objection.

12(4) The Debtor and his counsel either knew or should have know [sic] that nothing was "transferred under an assignment for benefit of creditors". The Debtor has represented that this "asset" is in his possession" [sic], but no such "asset" ever existed...

13(1) The Debtor is not entitled to an exemption under 735 ILCS § 5/12-901.

13(2) The Debtor's balance is not $100.00.

13(3) Based upon the values being incorrect under Schedules "A" and "B", the amount being claimed under Schedule "C" is also incorrect.

13(4) The Debtor fails to state a "Current Value of Property Without Deducting Exemptions" for "Fidelity Money Market".

14(1) The Debtor knew that the Mercantile Brokerage Company and Kenneth M. Neiman recorded a judgment lien against 508 S. Ridge Ave., Arlington Heights [sic] Illinois prior to the entry of an Order for Relief in this case. However, the Debtor failed to Schedule this lien.

Neiman then attacked other Schedules contained in Irmen's Chapter 7 petition, making similar conclusory allegations and also allegations based on "information and belief."

These shotgun style pleadings are insufficient under the Rule 9(b) pleading standard. They inadequately state facts as required by the particularity standard of Rule 9(b). Instead, the allegations are conclusory or based on "information and belief." Irmen's Motion to Dismiss Count III is therefore granted for failure to plead adequately under § 727(a)(4)(A).

## COUNTS III AND IV - § 727(a)(3) CLAIMS

Two paragraphs of Count III and the entirety of Count IV allege that Irmen destroyed or concealed and refused to provide books and records of the estate to Neiman, after Neiman made several written requests to produce to Irmen. This allegation stems from Neiman's attempt to

conduct an examination of Irmen pursuant to Fed. R. Bankr. P. 2004 without leave of the Court

by sending discovery requests to Irmen.  Irmen did not respond to any of these requests, but it is

not alleged that discovery was sought and refused in this Adversary where Plaintiff may have a

right to discovery.  Nor it is alleged that Neiman attended the bankruptcy case meeting of

creditors to question Irmen under oath as to his records.

Allegations concerning destruction or concealment of records or books are governed by

§ 727(a)(3).  Section 727(a)(3) provides that discharge will be denied where the debtor

"concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded

information, including books, documents, records, and papers, from which the debtor's financial

condition or business transactions might be ascertained, unless such act or failure to act was

justified under all of the circumstances of the case." *In re Volpert*, 175 B.R. 247, 265 (Bankr.

N.D. Ill. 1994).  Pleadings under this section are governed by Fed. R. Civ. P 8(a)(2) (made

applicable by Fed. R. Bankr. P. 7008).  The Supreme Court recently interpreted Rule 8(a)(2) as

requiring a pleading to contain "grounds of ... entitlement to relief" by showing more than "labels

and conclusions," but by providing "factual allegations ... enough to raise a right of relief above

the speculative level." *Bell Atlantic Corp.*, 127 S. Ct. at 1965-66.

In two paragraphs in Count III, Neiman alleges that Irmen "destroyed books and records

of th[e] estate and/or has refused to produce the same to Kenneth M. Neiman; and the Debtor ...

has concealed books and records of th[e] estate."  In Count IV, he alleges that Defendant/Debtor

holds many unspecified records that he has not produced in response to request of Plaintiff, and

therefore he has concealed those records.  However, the allegations in Counts III and IV are

devoid of specific facts sufficient to give notice of a § 727(a)(3) claim.  Neiman merely alleges

13

he sent several written requests to Irmen in the related bankruptcy case (without leave of the

Court), and Irmen refused to comply. Neiman also alleges, "upon information and belief," that

Irmen failed to comply with Mercantile's Rule 2004 examination. If the latter allegation is true,

only Mercantile through its own attorney who conducted that examination has standing to make

that allegation, not Neiman, since he is precluded under Illinois law from representing

Mercantile. Neiman does not allege that Irmen was ordered to produce books and records to

Neiman or was under any duty to do so. In fact, Neiman was never given leave to conduct an

examination of Irmen under Rule 2004 and his motions to join Mercantile's 2004 examination

were denied. Without more, Neiman's allegations contain mere conclusions containing a

"formulaic recitation of the elements of a cause of action" insufficient under Fed. R. Civ. P.

8(a)(2). He does not even identify books and records that are known to have existed or should

have existed that were not created or no longer exist. Plaintiff had the right to question

Debtor/Defendant at the meeting of creditors and through discovery in this Adversary proceeding

to learn of such details. Since Neiman has not pleaded the minimum "factual allegations ...

enough to raise a right to relief above the speculative level" required by Rule 8(a)(2) and *Bell*

*Atlantic Corp.*, Irmen's Motion to Dismiss Counts III and IV are therefore granted for failure to

plead adequately under § 727(a)(3).

## COUNT V - § 727(a)(5) CLAIM

In Count V of his complaint, Neiman alleges under 11 U.S.C. § 727(a)(5) that Irmen

failed to explain significant monetary transactions. Section 727(a)(5) provides "the court shall

grant the debtor a discharge, unless - . . . the debtor has failed to explain satisfactorily, before

determination of denial of discharge under this paragraph, any loss of assets or deficiency of

14

assets to meet the debtor's liabilities . . .." Two elements must be shown to establish a

§ 727(a)(5) violation. *In re Broholm*, 310 B.R. 864, 880 (Bankr. N.D. Ill. 2004). First, the

plaintiff must plead that the debtor owned specified substantial and identifiable assets at one time

and those assets are no longer available for the creditors. *Id.* Second, the plaintiff must

demonstrate that the debtor is required to provide a satisfactory explanation regarding the loss.

*Id.* For an explanation to be satisfactory, it must be supported by at least some documentation

and be sufficient to eliminate the need for any speculation regarding the disposition of the

debtor's assets. *Id.*

Here, Neiman alleges that Irmen and Auxano received substantial sums of money from

some of Irmen's creditors, specifically that Irmen received $4,000,000.00 from BP and

$130,000.00 from Summit Financial, both being Irmen's creditors. Neiman also alleges that

those particular creditors obtained either a judgment against Irmen or have pending suits, with

the cited transactions as the subject matter of the suits. Also, Neiman alleges Irmen made several

wire transfers between his bank account to a bank in Texas. Taken as true for purposes of this

motion, Neiman has met his initial burden of pleading that Irmen possessed substantial sums of

money at one time that are no longer available to his creditors. Neiman has also properly alleged

that Irmen failed to account for what was done with the money. Since Neiman met the pleading

requirements in Count V under § 727(a)(5), Irmen's Motion to Dismiss that Count is denied.

## COUNTS VI THROUGH X - § 523(a)(6) CLAIMS

In Counts VI through X of his complaint, Neiman seeks denial of Irmen's discharge under

§ 523(a)(6) of the Bankruptcy Code. Counts VI through VIII relate to the Agreement wherein

Irmen caused Auxano to assign assigned claims against MVG (Count VI), BP (Count VII), and

15

various other creditors (Count VIII) to Mercantile. In Count IX, Neiman seeks to have a default

judgment that was entered against Irmen in favor of Neiman and Mercantile declared

nondischargeable. The basis of that state court judgment was a suit Mercantile filed against

Irmen seeking payment for subcontracting services provided by National Decorating Service, Inc.

("National Decorating"). Neiman asserts that National Decorating later assigned its claim

against Auxano and Irmen to himself and Mercantile. Count X of the complaint alleges that

Neiman and Irmen entered into two contracts and Irmen failed to pay for services provided under

the contracts. Neiman does not allege any details of the contract such as the purpose,

performance, or consideration, nor does he attach the contracts as an exhibit. Neiman states that

he is unable to locate documentation relating to the contracts and also alleges that he provided

Irmen with his only copies of supporting documentation that Irmen subsequently refused to

return.

    Determining a claim or debt to be nondischargeable under § 523(a) requires two steps. *In
re Salvino*, 373 B.R. 578, 584 (Bankr. N.D. Ill. 2007). First, the creditor must establish a debt

under applicable non-bankruptcy law. A debt is defined by § 101(12) of the Code as a liability

on a claim. *Id.* Second, the creditor must show that the claim falls under one of the categories

enumerated in § 523(a). *Id.*

    Section 523(a)(6) provides that a debt will not be discharged for "willful and malicious

injury by the debtor to another entity or to the property of another entity." Intentional breach of

contract, by itself, is insufficient for willful and malicious injury under § 523(a)(6); a showing of

intentional tortious conduct is required. *In re Jercieh*, 238 F.3d 1202, 1206 (9th Cir. 2001); *but
see In re Williams*, 337 F.3d 504, 51 (5th Cir. 2003). Under *Kawaauhau v. Geiger*, 523 U.S. 57,

16

64 (1998), "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)". *Kawaauhau* requires "acts with the actual intent to cause injury" for a claim under § 523(a)(6), not "acts, done intentionally, that cause injury." *Kawaauhau*, 523 U.S. at 61.

## Count VI Claim

Count VI asserts several purported breaches of the Agreement which do not themselves give notice of any claims under § 523(a)(6). However, these matters are context for what purports to allege a § 523(a)(6) claim against Irmen regarding the assignment to Mercantile of Auxano's claim against MVG for $106,611.00. Neiman alleges that Irmen made several misrepresentations to him, inducing Mercantile to enter into the Agreement. Specifically, Neiman rests on one of the Agreement's provisions wherein Irmen represented that he was unaware of any defenses to Auxano's claims that MVG may have. However, before execution of the Agreement in March 2005, MVG had filed a lawsuit against both Irmen and Auxanao in October of 2004. The Agreement also contained a provision representing that all claims assigned by Auxano were made "free and clear of any liens or claims for lien," but that Irmen's company Auxano had previously executed an undisclosed Uniform Commercial Code statement of interest in favor of a bank, and the Internal Revenue Service had served an undisclosed Notice of Levy upon Auxano prior to execution of the Agreement.

From these allegations, it is apparent that Neiman pleaded allegations sufficient in Count VI to give notice of a § 523(a)(6) cause of action. Taken as true for purposes of the Motion to Dismiss, those allegations plead not only that Irmen and Auxano breached the Agreement, but also that while Irmen was aware of certain material facts he misrepresented his knowledge of

17

those facts when the Agreement was executed, thereby deliberately injuring the Plaintiff by his

deception. Since Neiman sufficiently pleaded a willful and malicious injury, Irmen's Motion to

Dismiss Plaintiff's Count VI under § 523(a)(6) is denied.

**Count VII Claim**

Count VII pleads a § 523(a)(6) claim against Irmen regarding the assignment of Auxano's

claims against BP for $352,000.00 to Mercantile. Here, Neiman alleges that at the time of the

Agreement, Irmen knew the assignment contemplated by the parties would only be valid if BP

consented to the assignment. In a conclusory manner, without providing any supporting facts,

Neiman further alleges that Irmen knew that BP would not consent to the assignment. But Count

VII does not purport to allege tortious conduct by Irmen. Rather, the remaining allegations allege

Irmen failed to obtain the consent of BP to assign Auxano's claims to Mercantile and that Irmen

failed to cooperate with Mercantile regarding the assignment as required by the Agreement.

Those allegations tend at best only to plead a breach of contract. Even though Neiman alleges

that Irmen intentionally breached the parties' agreement, Neiman's conclusory allegations of

misrepresentation, absent any supporting details showing a misrepresentation, do not meet the

pleading requirements required by Fed. R. Civ. P. 8(a) and the *Bell Atlantic Corp.* standards.

Therefore, Irmen's Motion to Dismiss Count VII is granted for failure to plead adequately under

§ 523(a)(6).

**Count VIII Claim**

Count VIII is similar to Neiman's Count VII claim except it involves the assignment of

Auxano's claims against various smaller creditors to Neiman. Like Count VII, Count VIII, in its

18

§ 523(a) claim, alleges misrepresentation and breach of contract. Although Neiman pleads an

intentional breach of contract, he does not state any facts as to how Irmen supposedly made

misrepresentations. All that is alleged are conclusory statements that Irmen made representations

he knew to be false, the misrepresentations were material, and that Mercantile relied on Irmen's

misrepresentations. There are no allegations concerning what Irmen allegedly misrepresented.

While Plaintiff alleges in paragraph 49 that Defendant made "each of the representations under

paragraph 5(1)," there is no "paragraph 5(1)" and therefore no misrepresentations are alleged.

Neiman alleges the statutory elements for a misrepresentation, but does not allege

supporting or informative facts. Since Count VIII is bereft of allegations containing any basis for

the misrepresentation that Neiman alleges, or any other tortious conduct required for a

§ 523(a)(6) claim, Irmen's Motion to Dismiss Count VIII is granted for failure to plead

adequately under § 523(a)(6).

### Count IX - § 523(a)(6)(A) Claim

Count IX relates to a default judgment Neiman obtained from Irmen in an Illinois state

court proceeding for breach of contract. In Count IX, Neiman alleges that Irmen, "through his

alter-ego, Auxano," was hired to perform construction work for BP. Auxano then subcontracted

some of the construction work to National Decorating. It is further alleged that National

Decorating was never paid for its work. Neiman alleges BP provided funds to Auxano to pay

National Decorating, but Auxano failed to do so. National Decorating subsequently assigned its

claims against Auxano to Neiman and Mercantile. As a result of the assignment, Neiman

obtained a default judgment for $223,701.62. Neiman also pleads several conclusory allegations

that Irmen made misrepresentations because he knew he would "defalcate with BP's funds"

19

instead of paying National Decorating at the time of entering into the contract. Neiman further

alleges that Irmen intended to commit financial harm to the Neiman. However, in Count IX,

Neiman does not make any factual allegations showing factual basis for the claim of

misrepresentation or any other tortious conduct against Neiman. Without such allegations,

Neiman's § 523(a)(6) claim in that Count is insufficient. Therefore, Irmen's Motion to Dismiss

Count IX is granted as to those parts purporting to plead under § 523(a)(6).

## Count IX - § 523(a)(4) Claim

However, Count IX of Neiman's Complaint also makes a claim under § 523(a)(4) of the

Bankruptcy Code. Section 523(a)(4) provides "[a] discharge under section 727 ... of this title

does not discharge an individual debtor from any debt- ... for fraud or defalcation while acting in

a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To show fraud or

defalcation under § 523(a)(4), a plaintiff must establish the following: "(1) existence of an

express trust or fiduciary relations of 'inequality that justify the imposition on the fiduciary of a

special duty, basically to treat his principal's affairs with all the solicitude that he would accord

his own affairs;' (2) the debt was caused by the debtor's fraud or defalcation; and (3) the debtor

acted as fiduciary to the plaintiff at the time the debt was created." *Volpert*, 175 B.R. at 259.

Count IX adequately pleads defalcation by Defendant of "at least $22,701.62" entrusted to him

for use to pay a subcontractor named National Decorating Service, Inc.

Therefore, Irmen's Motion to Dismiss Count IX is denied as to this claim under

§ 523(a)(4).

## Count X - § 523(c)(6)

Count X contains another attempt to plead under § 523(a)(6). Here, Neiman alleges that

he "entered into at least two written contracts" with Irmen who allegedly made false statements

representing he would pay "all sums to come due" under the contracts. However, Neiman admits

that he cannot locate the contracts and subsequently did not attach them to the complaint.

Further, Neiman does not allege the purpose, performance, dates, who signed them, or

consideration for the contracts. Neiman further alleges that Irmen represented himself as a

lawyer for Auxano who operated a "national construction firm." Neiman then alleges he

demanded $4,000 from Irmen due for performance under the contract. When Irmen refused,

Neiman provided Irmen with his only copies of time sheets, invoices, and other papers relating to

the alleged contracts. Neiman further alleges Irmen refused to return the documents and failed to

pay what was due under the contracts.

Here, Neiman's allegations fail to allege sufficiently the existence of the contracts.

Neiman does not attach the contracts, nor does he allege any basis of fact for the existence of

either contract. He does not allege the dates of any contracts, who signed them, the performance

required, the purpose, or the consideration. Neiman further alleges that the only supporting

documents of the alleged contracts are no longer in his possession. Moreover, the Count merely

pleads breach of contract, and not a misrepresentation. Since Neiman has not even sufficiently

plead the existence of the two contracts on which the Count rests let alone give notice of a

§ 523(a)(6) cause, Irmen's Motion to Dismiss Count X is granted.

## CONCLUSION

21

For the foregoing reasons, Irmen's Motion to Dismiss was by separate order granted in part and denied in part. Irmen's Motion to Dismiss Counts V, VI, and IX [as to § 523(a)(4)] was denied. The Motion as to Counts III, IV, VII, VIII, IX [as to § 523(a)(6)], and X was allowed.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Dated this _____ day of December 2007